UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Hammer |
| v. | : | Mag. No. 19-4166 |
| JHAN CARLOS CAPELLAN MALDONADO, JOSE ANTONIO VASQUEZ PENA, a/k/a "Tono," and DILSON VASQUEZ GENAO | : : | **CRIMINAL COMPLAINT** |

I, Philip Castrogiovanni, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with Homeland Security Investigations and that this complaint is based on the following facts:

SEE ATTACHMENT B

Continued on the attached page and made a part hereof.

Philip Castrogiovanni
Special Agent
Homeland Security Investigations

Sworn to before me and subscribed in my presence,
February 28, 2019 at Newark, New Jersey

THE HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

**ATTACHMENT A**

From on or about February 12, 2019 through on or about February 27, 2019, in Essex and Mercer Counties, in the District of New Jersey, and elsewhere, the defendants,

JHAN CARLOS CAPELLAN MALDONADO,
JOSE ANTONIO VASQUEZ PENA, a/k/a "Tono," and
DILSON VASQUEZ GENAO

did knowingly and intentionally conspire and agree with each other and others to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

In violation of Title 21, United States Code, Section 846.

**ATTACHMENT B**

I, Philip Castrogiovanni, have been a Special Agent with Homeland Security Investigations ("HSI"), or its predecessor agencies, for the past nine years. I have been personally involved with the investigation of this matter. The information contained in this Criminal Complaint is based on my personal knowledge, my conversations with other law enforcement officers, and on information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of the relevant facts; (b) my review of publicly available information relating to the defendants; and (c) my review of documents and evidence obtained through court orders, subpoenas, and other sources. Because this Criminal Complaint is being submitted for the limited purpose of establishing probable cause, it does not include every fact that I have learned during the course of the investigation. Where the content of documents and the actions, statements, and conversations of individuals are recounted here, they are recounted in substance and in part. All dates and times are approximate.

1. In or around January 2019, HSI began investigating a drug trafficking organization ("DTO") operating in or around New Jersey, New York, and elsewhere. Based on information obtained from witnesses, search warrants, physical surveillance, GPS trackers, searches of law enforcement databases, and other investigative techniques, the investigation has revealed that the DTO has been distributing narcotics in and around Essex and Mercer Counties, New Jersey, and that JHAN CARLOS CAPELLAN MALDONADO ("MALDONADO") is a supplier of heroin and fentanyl, and JOSE ANTONIO VASQUEZ PENA (a/k/a "Tono") ("PENA") and DILSON VASQUEZ GENAO ("GENAO") are members of the DTO who help to package and distribute the heroin and fentanyl to the DTO's customers in and around New Jersey.

2. In or around early February 2019, law enforcement learned that MALDONADO used an apartment in the Bronx, New York to store, mix, and package heroin and fentanyl in distribution quantities. Law enforcement also learned that MALDONADO employed approximately five or six workers at a time to assist in preparing the heroin and fentanyl for distribution, which MALDONADO then distributed to customers in New Jersey. Law enforcement surveillance, law enforcement databases, and a Court-authorized GPS tracker on MALDONADO's car indicated that MALDONADO's car traveled from New York to New Jersey approximately three times between on or about February 12, 2019 and on or about February 24, 2019, and on each occasion stayed in New Jersey for only a few hours.

3. On or about February 23, 2019, law enforcement learned that MALDONADO had established a location in an apartment within an apartment building in the Bronx, New York (the "Andrews Avenue Location") in which to store and package heroin and fentanyl for distribution. Law enforcement also

learned that PENA was living at the Andrews Avenue Location in order to safeguard the narcotics and narcotics supplies.

4. On or about February 23, 2019, the GPS tracker indicated that MALDONADO's car was in the vicinity of the Andrews Avenue Location for approximately six hours before moving back to a location on 185th Street in the Bronx, New York, believed to be MALDONADO's residence.

5. The next day, on or about February 24, 2019, the GPS tracker indicated that MALDONADO's car was located around the Andrews Avenue Location, where it remained for a few minutes before departing the area and driving to New Jersey.

6. At approximately 10:30 a.m. on the same day, law enforcement conducting surveillance observed MALDONADO's car at a residential location in Trenton, New Jersey, with the driver's seat empty and an individual later identified as PENA in the passenger seat. Soon after, law enforcement observed MALDONADO walking on the sidewalk away from a residence and saw him get in MALDONADO's car and drive back to MALDONADO's residence in New York. At approximately 4:50 p.m. the same day, the GPS tracker indicated that MALDONAD's car was back in the vicinity of the Andrews Avenue Location.

7. On or about February 25, 2019, law enforcement observed MALDONADO's car again parked in the vicinity of the Andrews Avenue Location for approximately six hours. At approximately 6:15 p.m. that day, law enforcement observed MALDONADO come out of the Andrews Avenue Location, get in MALDONADO's car, stop at MALDONADO's residence, and drive to a retail store where MALDONADO emerged with several shopping bags full of items. At approximately 7:05 p.m., law enforcement observed MALDONADO drive MALDONADO's car to the Andrews Avenue Location, where an unknown male—later identified as GENOA—came out of the building in which the Andrews Avenue Location is located and met curbside with MALDONADO, who got out and gave GENOA the plastic shopping bags. Through its investigation, law enforcement later learned that the plastic shopping bags contained materials to package heroin and fentanyl.

8. With the shopping bags in hand, GENOA went back inside the building. Law enforcement followed GENOA on foot and watched as GENOA entered an apartment (i.e. the Andrews Avenue Location) with a key, still carrying the shopping bags.

9. On or about February 27, 2019, law enforcement obtained a Court-authorized search warrant to search the Andrews Avenue Location. When law enforcement executed the search warrant at approximately 1:30 p.m. the same day, they found several individuals inside, including MALDONADO,

PENA, and GENAO. Upon seeing law enforcement, MALDONADO, PENA, and GENAO attempted to flee out a window in the bedroom of the Andrews Avenue Location but were apprehended and arrested by law enforcement waiting outside.

10. In a subsequent search of the Andrews Avenue Location, law enforcement recovered approximately 800 "bricks" of a light brown substance resembling heroin from a garbage bag inside a black suitcase stored in a closet.[1] Each "brick" was stamped in red with the moniker "FedEx." Typically, one "brick" contains approximately one gram of heroin. Law enforcement also recovered from a table in a bedroom in the Andrews Avenue Location: two large piles of a light brown raw substance resembling heroin ready for packaging; and two cellophane-wrapped chunks of a light-colored substance resembling raw heroin.

11. Law enforcement also found and seized from the Andrews Avenue Location the following items: approximately nine grinders used to mill heroin and fentanyl, many of which contained light brown and white powder substances resembling heroin and fentanyl, respectively; thousands of unused, empty glassine envelopes; tape; extra stamps; and rubber bands—all of which are materials routinely used by drug traffickers to package narcotics like heroin and fentanyl.

---

[1] Due to safety concerns, law enforcement did not field test the suspected drug substances. Instead, law enforcement sent the suspected narcotics to a laboratory for testing.